**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| Brooke Rose S., | Case No.  1:24-cv-00584-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Brooke Rose S.'s Petition for Review (Dkt. 1) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.      ADMINISTRATIVE PROCEEDINGS

On September 28, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.  That same day, Plaintiff also filed a Title XVI application for supplemental security income.  In both applications, Plaintiff alleged disability beginning January 1, 2017.  These claims were initially denied on June 21, 2022, and denied on reconsideration on February 16, 2023.  Plaintiff then filed a written request for a hearing before an Administrative Law Judge on April 10, 2023.  On March 14, 2024, ALJ Trina Mengesha-Brown (the "ALJ") held a video hearing, where Plaintiff appeared with attorney Sean Wilson. Matthew Charles Lampley, an impartial vocational expert, also appeared at the hearing.

On April 23, 2024, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within under the Social Security Act for the purposes of both her supplemental

security and disability insurance applications.  Plaintiff then requested review from the Appeals Council.  On October 8, 2024, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Plaintiff brings this case.  She contends the ALJ erred in two respects: (i) by rejecting the medical opinion of Dr. Laurence Hicks ("Dr. Hicks") without providing a valid supportability analysis or a consistency explanation otherwise supported by substantial evidence, and (ii) by failing to include (or explain the absence of) a neck-flexion limitation within the determination of her residual functional capacity.  Pl.'s Br. at 4.

## II.    STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the

conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.    DISCUSSION

### A. The Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20

C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff had not engaged in SGA since January 1, 2017, the alleged onset date.  AR 19.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff has the following severe medically determinable impairments: "temporomandibular joint disorder (TMJ); cervical degenerative disc disease; chronic pain syndrome; endometriosis and ovarian cysts status-post hysterectomy and oophorectomy; and right knee patellar tendon lateral femoral condyle friction syndrome."  AR 20.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds

to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Plaintiff's

medically determinable impairments, alone or in combination, did not meet or medically equal

the criteria established for any of the listed impairments.  AR 21.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's

residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do

physical and mental work activities on a sustained basis despite limitations from her

impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work was substantial gainful activity and lasted long enough for the claimant

to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, as to

Plaintiff's residual functional capacity, the ALJ concluded:

> The claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> with the following additional limitations: occasional climbing
> ramps and stairs; never climbing ladders, ropes, or scaffolds;
> occasional stooping, kneeling, crouching, and crawling; the
> avoidance of unprotected heights and workplace hazards; frequent
> reaching bilaterally and only occasional overhead reaching
> bilaterally; occasional pushing and pulling a maximum of 10
> pounds; no work with vibrations; no work requiring talking on a
> telephone; no work requiring more than occasional talking; the
> claimant requires a work environment with no more than moderate
> noise and no bright lighting; and the claimant must alternate
> between sitting and standing by standing for 10 minutes after one
> hour of sitting remaining on task.

AR 22.  The ALJ then concluded that, based on this RFC, Plaintiff was unable to perform any past relevant work.  AR 28-29 (finding demands of Plaintiff's past relevant work as a teller, tour guide, and lifeguard exceed her RFC).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Plaintiff could work as a touch up screener/circuit board assembler, table worker, and final assembler.  AR 30.  Based on these findings, the ALJ concluded that Plaintiff was not under a disability from January 1, 2017, the alleged onset date, through the date of the decision.  *Id.*

## B.  Analysis

### 1.  The ALJ Properly Evaluated the Medical Opinion of Dr. Hicks

Plaintiff first argues that the ALJ erred by rejecting the medical opinion of Dr. Hicks without proper supportability and consistency analyses.  Pl.'s Br. at 4.  In particular, Plaintiff argues that (i) the ALJ's supportability analysis improperly looked to Dr. Hicks's external treatment notes, not the internal rationale of his opinion, and (ii) the ALJ's consistency analysis was not supported by substantial evidence, in part because it contrasted Dr. Hicks's opinion with only one other medical opinion.  *Id.*  Defendant responds that the ALJ's supportability analysis validly looked to Dr. Hicks's treatment notes, and the ALJ's consistency analysis was supported

by substantial evidence.  Def.'s Br. at 2-9.  The Court agrees with Defendant that remand is not warranted here.

      *a.  Legal Standard*

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors.  *Id*.  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  These bases include a professional's own examination records and clinical findings.  *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The consistency factor, on

the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

### b. *The ALJ's Decision*

In determining Plaintiff's RFC, the ALJ considered relevant medical opinions and prior administrative medical findings. AR 25-27. One of those came from Dr. Hicks, who opined that Plaintiff's impairments would limit her ability to work. AR 3327-28. Dr. Hicks concluded that Plaintiff's work-related limitations included a reduced range of sedentary work, limited sitting, elevation of the legs, off task behavior, and limitations on reaching, handling, and fingering. *Id.* Additionally, Dr. Hicks found that Plaintiff would need to take unscheduled breaks every 1-2 hours and be absent from work more than four days per month. *Id.*; *see also* Pl.'s Br. at 6.

The ALJ concluded that Dr. Hicks's opinion was not persuasive. AR 26. As to supportability, the ALJ concluded that "[t]he opinion is not supported by Dr. Hicks's treatment notes. Dr. Hick's physical examination findings show multiple areas of tenderness (abdomen/pelvis/back/shoulders/jaw), but do not document any other material abnormalities."

*Id.* Next, as to consistency, the ALJ found the opinion "not consistent with the examination findings of the physical consultative examiner or other treating providers." The ALJ elaborated on her consistency analysis:

> The claimant attended a physical consultative examination in May 202. Positives on exam include difficulty transitioning between sitting and standing, the need to alternate position, decrease range of motion in the neck, and a tender abdomen. However, the claimant maintained clear respirations, full range of motion in the upper and lower extremities, full strength throughout (including pinch and grip), intact dexterity for both fine and gross movements, and a negative Romberg.

*Id.* (citations omitted).

Here, Plaintiff contends that – as to supportability – the ALJ erred by focusing on Dr. Hicks "external" treatment notes, rather than his "internal" diagnoses, clinical findings, objective signs, and explanations. Pl.'s Br. at 7. The Court disagrees. The ALJ validly considered Dr. Hicks's own treatment notes in her supportability analysis, because those notes formed the basis of Dr. Hicks's opinion. In looking to them, the ALJ therefore looked *inward* at the grounds upon which Dr. Hicks relied to draw his conclusions, not *outward* at the grounds or conclusions of others.

The plain language of the applicable regulations confirms that an ALJ may properly consider a medical professional's own treatment notes in evaluating the supportability of that medical professional's opinion. The relevant regulation directs an ALJ evaluating the supportability of a medical opinion to consider the "objective medical evidence" and "supporting explanations" that "support . . . .[a] medical opinion." 20 C.F.R. § 404.1520c(c)(1). The plain and ordinary meaning of "support" suggests that the regulations are concerned with the basis of a medical professional's opinion. A medical professional's own treatment notes, as a record of the observations and evaluations that a medical professional uses to form their opinion, are logically

part of the basis of their opinion.  As such, they are precisely the type of inward-looking data contemplated by the supportability factor.

This interpretation is supported by comparison to the regulation concerning the outward-looking consistency factor.  The relevant regulation directs an ALJ to consider "evidence from *other medical sources* and nonmedical sources in the claim."  20 C.F.R. § 404.1520(c)(2) (emphasis added).  Thus, the regulation explicitly focuses the consistency analysis on information coming from sources other than the medical professional who produced the opinion in question.  If a medical professional's own treatment notes could not be properly considered in the supportability analysis, because they are "external" as Plaintiff claims, then they could not be considered at all in the evaluation of a medical opinion's persuasiveness – an illogical result.

Finally, Ninth Circuit precedent supports this conclusion.  The Ninth Circuit does not consider a medical professional's own treatment notes to be "external" data not properly considered by an ALJ as part of the inward-looking supportability factor.  Just the opposite: in *Kitchen*, the Ninth Circuit affirmed an ALJ's decision that had evaluated the supportability of a medical opinion by looking to notes of the source's "mental status examinations" and "objective observations during office visits."  82 F.4th at 740.  Similarly, the ALJ here looked at Dr. Hicks's own treatment notes and "examination findings."  AR 26.  Accordingly, the Court concludes that the ALJ did not err in considering Dr. Hicks's treatment notes as part of her supportability analysis.

Plaintiff also asserts that the ALJ's supportability analysis was not supported by substantial evidence.  Pl.'s Br. at 7.  The Court again disagrees.  The ALJ properly noted that Dr. Hicks merely observed tenderness in examining Plaintiff, but did not diagnose any other "material abnormalities."  AR 26; *see also* AR 3327-28.  By failing to diagnose any specific

impairments beyond tenderness, Dr. Hicks failed to support the significant functional limitations he imposed.  This reasonably undermined the persuasiveness of his opinion and amounts to substantial evidence to reject it as unsupported.

Next, the Court considers the ALJ's consistency analysis.  Here, the ALJ found that Dr. Hicks' opinion was "not consistent with the examination findings of the physical consultative examiner [Dr. Reintjes] or other treating providers."  AR 26.  Dr. Reintjes's examination found that Plaintiff had full range of motion in her upper and lower extremities, full strength pinching and gripping, and intact dexterity.  *Id.*  These findings reasonably contradicted the limitations opined by Dr. Hicks, including his opinion that Plaintiff was limited in reaching, handling, and fingering.  *Id.*  Accordingly, the ALJ found that Dr. Hick's opinion was inconsistent and unpersuasive.  *Id.*

Plaintiff says this is not enough.  She argues that the ALJ erred in her consistency analysis by contrasting Dr. Hicks's opinion *only* with Dr. Reintjes' opinion.  Pl.'s Br. at 8.  Plaintiff is mistaken.

The ALJ did *not* solely contrast Dr. Rick's opinion with Dr. Reintjes's opinion.  Although the Court may not invent grounds for the ALJ's decision that do not exist, it must also consider the entire record in assessing an ALJ's decision.  *Richardson*, 402 U.S. at 401.  Elsewhere, the ALJ noted that state agency medical consultants and a physical consultative examiner had found that Plaintiff had full range of motion in her upper and lower extremities, full strength throughout, and intact dexterity.  AR 25.  These findings were inconsistent with Dr. Hick's opinion.  Accordingly, the ALJ's reference to "other treatment providers" adequately referred to these findings and she was not obligated to repeat her remarks a page later.  Her consistency analysis was thus supported by substantial evidence.

In sum, the ALJ adequately analyzed both the supportability and consistency of Dr. Hicks's opinion. Remand is not warranted on this issue.

2. The ALJ's RFC Is Supported by Substantial Evidence

Plaintiff next argues the ALJ erred by failing to include, or rationally explain the absence of, a neck-flexion limitation in the RFC. Pl.'s Br. at 10. She argues that because "[t]he medical opinions and record all support[] a finding that Plaintiff has neck-related limitations based on a reduced range of motion and pain" to which "no rational ALJ could disagree," the ALJ here disregarded Plaintiff's properly supported limitations. *Id.* Plaintiff also argues that the ALJ improperly relied on her lay interpretation of medical data to arrive at Plaintiff's RFC. *Id.* at 12-13. Defendant responds that the ALJ reasonably did not include a neck flexion limitation because none of the medical opinions and prior administrative medical findings included one. Def.'s Br. at 9-11. Further, Defendant responds that Plaintiff misconstrues objective medical evidence (demonstrating neck-related symptoms) for medical opinions (recommending neck-related limitations). *Id.* at 11-13. The Court agrees with Defendant that remand is not warranted on this issue.

a. Legal Standard

"A claimant's RFC is what a claimant can still do despite h[er] limitations." *Moriarty v. Colvin*, Case No. CV 14-6909 RNB, 2015 WL 4397913, at *1 (C.D. Cal. July 17, 2015) (citing *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996)). It is well-settled that it is the ALJ's responsibility to "translat[e] and incorporate[] [the] clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). It is also well-settled that it is

the responsibility of the ALJ to determine the credibility of the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). To make these determinations, an ALJ must, by necessity, analyze, assess, and draw conclusions from the available medical evidence. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is "is entitled to draw inferences logically flowing from the evidence" and "need not substitute the judgment of expert witnesses for his own").

"In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record." *Mendoza v. Kijakazi*, Case No. 1:19-cv-1371-HBK, 2022 WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (*citing Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). An ALJ's RFC findings must be consistent with, but not identical to, the credible and properly supported limitations on the record. *Id.* (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

  b. *The ALJ's Decision*

  i.  <u>The ALJ's RFC was consistent with the credible and properly supported limitations within the record</u>

The ALJ's decision found that Plaintiff suffered from cervical degenerative disc disease, among other impairments. AR 20. The ALJ's RFC did not include a specific limitation related to Plaintiff's ability to flex or otherwise move her neck at work. AR 22. However, in arriving at Plaintiff's RFC, the ALJ evaluated record evidence, including medical opinions and prior administrative medical findings, that suggested Plaintiff had pain and range of motion issues in her neck. AR 24-27.

Dr. Kurt Reintjes, the state physical consultative examiner, examined Plaintiff's neck range of motion. AR 1777. Relevant to flexion limitations, he measured "[f]orward flexion to 50 degrees, extension 40 degrees, lateral flexion 45 degrees to the left and 45 to the right. Right lateral rotation 50 degrees, left lateral rotation 45 degrees with evidence of pain into the bilateral upper trapezius muscles when she was doing this." AR 1777. The corresponding numerical scores Dr. Reintjes entered for Plaintiff's neck range of motion indicated that she had full forward and lateral flexion, and had somewhat less than full range of motion in extending to the right side and rotating to both sides. AR 1779. Dr. Reintjes concluded:

> The combination of both of these types of pain syndromes make this extremely debilitating and difficult for Ms. Sorenson…[a]ny type of lifting, bending, pushing, or pulling should be limited and not to exceed anything from 5 to 10 pounds…also, extensive work on the computer very well could be exacerbating as well; however, this may be improved with continued physical therapy.

AR 1778. However, Dr. Reintjes did not mention neck flexion limitations in this conclusion. And, as his numerical scores indicated, he found Plaintiff's neck range of motion to be within normal ranges.

Dr. Glenn Zausmer found that due to Plaintiff's "reduced cervical ROM, it would be reasonable to assess that she would be limited to a light RFC with push/pull limitations to occasional in the [bilateral upper extremities] . . . [d]ue to chronic neck pain and reduced ROM of the neck, OH/Lat reaching would be limited to occasional." AR 82. Thus, Dr. Zausmer explicitly found that Plaintiff's neck pain and range of motion issues should be addressed by push/pull and overhead/lateral reaching limitations.

Dr. Leslie Arnold also referenced Plaintiff's chronic neck pain. AR 105-111. However, in addressing Plaintiff's work-related exertional, postural, and manipulative limitations, he did not find that Plaintiff was limited in neck flexion. AR 106-07. Indeed, he elsewhere noted that

Plaintiff's neck had a "[n]ormal range of motion," that her "[n]eck pain is improved," and that she did "not feel nearly as shaky in neck and shoulders." AR 108. Therefore, Dr. Arnold neither found that Plaintiff had a work-related neck flexion limitation, nor explicitly tied Plaintiff's neck pain to her neck range of motion.

Eric Crum, a chiropractor, treated Plaintiff "a handful of times." AR 2578. He reported that Plaintiff had chronic neck pain, and that her pain "certainly disrupts her ability to perform work duties and [activities of daily life]." AR 1705. However, he found Plaintiff's neck range of motion to be no more than mildly reduced, although he noted associated pain. AR 1706, 1726. His treatment notes reported Plaintiff was "[i]mproving because she is reporting less discomfort and is showing improved function." AR 1708, 1710, 1712. Elsewhere, he reported that Plaintiff had degenerative joint disease that limited her neck range of motion and made her "vulnerable to flare-ups." However, he opined that Plaintiff was:

> [V]ery functional and I think can perform most duties. She is limited on her ability to lift over 20 pounds, and she is limited on how long she can stay in any particular position (sitting, standing, bending can all be performed but not for considerable times without a break or change in position. I am unaware of any specific limitation other than mentioned above, but certainly can attest to[] the pain she experiences from her neck, back, and TMJ.

AR 2578. Accordingly, Dr. Crum noted some reduced range of motion in Plaintiff's neck, as well as her neck pain, but specifically disclaimed any neck flexion limitation.

Finally, Dr. Hicks opined that Plaintiff suffered from "neck pain and stiffness." AR 3326. However, none of his opined work-related limitations referred to Plaintiff's neck flexion. AR 3327-30.

Plaintiff points to this record and argues that it compels the inclusion of a neck flexion limitation in her RFC. Pl.'s Br. at 10. The Court disagrees. As the summary above makes clear,

none of the medical professionals who evaluated Plaintiff found that her neck range of motion

was more than slightly reduced.  Moreover, medical professionals at multiple points in the record

indicated that Plaintiff's neck range of motion was normal.  No medical professional put forth an

explicit causal link between Plaintiff's well-documented neck pain and the range of motion in

her neck.  Nor did any medical professional in the record specifically suggest that Plaintiff would

need to perform work with only limited neck flexion.  Ultimately, as Defendant points out, at no

point did the ALJ have before her in the record a specific neck flexion limitation proposed and

supported by a medical opinion.  Def.'s Br. at 11.  Plaintiff's Reply does not substantively

respond to this point.  *See* Reply at 1-4.  Put simply, the record here is not as clear-cut as Plaintiff

suggests.

Instead, the ALJ was confronted with relevant medical evidence about the condition of

Plaintiff's neck that could reasonably be read multiple ways.  The ALJ chose to account for

Plaintiff's neck impairments with other limitations in her RFC that were better rooted in the

relevant evidence.  For example, the ALJ found that Plaintiff could only occasionally reach

overhead, could only occasionally push and pull a maximum of 10 pounds, and needed to

alternate between sitting and standing.  AR 22.  Substantial evidence supports the ALJ's

conclusion, as well as the ALJ's decision to omit a neck flexion limitation.[1]

---

[1] As Defendant points out, Plaintiff's brief conflates objective medical evidence (here, neck-related symptoms) with medical opinions (neck-related work limitations recommended by medical professionals).  Def.'s Br. at 11-13.  Objective medical evidence is defined as "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1).  Medical opinions are defined as a "statement from a medical source about . . . whether you have one or more impairment-related limitations."  20 C.F.R. § 404.1513(a)(2).  This underscores that at no point did a medical professional opine that Plaintiff was *required* to work with a neck flexion limitation.  Rather, as a review of the record makes clear, portions of Plaintiff's medical records contained objective medical evidence that suggested her neck function was somewhat limited.  While a medical opinion specifically proposing a limitation is not required in every case for that limitation to be "properly supported" and therefore require incorporation into an RFC, *Turner*, 613 F.3d 1222-23, the absence of an opined neck flexion limitation by *any* medical professional in this case is dispositive.

Clarifying the state of the record here makes clear that Plaintiff's arguments on appeal are less about asserting error in the ALJ's reasoning than they are about advocating for a different interpretation of the record evidence. It is the ALJ's job to sift through record evidence and arrive at a succinct RFC that encapsulates a claimant's ability to work. *Smolen*, 80 F.3d at 1291. Although Plaintiff may wish the ALJ had drawn different conclusions from this record, the conclusions the ALJ did draw were supported by substantial evidence.

In sum, the ALJ's RFC finding was consistent with the credible and properly supported limitations contained within Plaintiff's record. *Turner*, 613 F.3d at 1222-23. Remand is not warranted here.[2]

## IV.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint for Review of a Social Security (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

DATED: April 23, 2026

_____

Honorable Raymond E. Patricco

Chief U.S. Magistrate Judge

---

[2] Plaintiff also argues that the ALJ erred by engaging in lay analysis of her MRI results. Pl.'s Br. at 11-13. This argument fails for multiple reasons. First, any error on this point is harmless. The specific issue Plaintiff asserts on appeal (the absence of a neck flexion limitation in the RFC) is supported by substantial evidence, because there was no properly supported neck flexion limitation in the record before the ALJ. *See supra.* The RFC did not hinge on the ALJ's analysis of Plaintiff's MRI results. Second, the ALJ did not improperly analyze Plaintiff's MRI results. Rather than interpret raw medical data, the ALJ merely repeated doctors' analysis of Plaintiff's MRI results word-for-word. AR 24-25, 978-980, 2614. Further, she used this analysis only to conclude that Plaintiff's MRI results showed no significant abnormalities. AR 24-25. That kind of negative inference is entirely proper for an ALJ to make. *Sample*, 694 F.2d at 642.